1807.

Negro James
vs
Gaither

and had less land passed by the patent than was contained in the certificate; the defendant's remedy, if any, must have been in equity.

*Judgment* was entered for the defendant; and the plaintiff appealed to this court, where the case was argued before TILGHMAN, BUCHANAN, and GANTT, J. by

*T. Buchanan*, for the Appellant, and by
*Mason*, for the Appellee.

JUDGMENT AFFIRMED.

---

DECEMBER.

NEGRO JAMES *vs.* GAITHER.

Parol evidence is not admissible to prove that a deed of manumission was attested in the presence of two witnesses, only one having signed the same.

A deed of manumission under the act of 1752, ch 1, s 5, executed in the presence of only one witness, will not operate to give freedom to the slaves mentioned therein.

APPEAL from the General Court. The petitioner, (now appellant,) filed his petition for freedom in *Anne-Arundel* county court. The case was this—A deed of manumission, dated the 13th of September 1784, was executed by *B. Gaither*, deceased, then of *Prince-George's* county, giving freedom, after his death, to sundry of his negro slaves, among whom was the petitioner, *Negro James.* The deed was signed and sealed by him in the presence of; and acknowledged before *T. Boyd*; one of the justices of the peace for *Prince-George's* county, on the 13th of September 1784, and recorded in the records of that county on the 27th of November 1784. *Gaither* by his will, dated the 20th of June 1791, devised and bequeathed as follow: "Item. I give and devise to *B. Ijams* all my land whereon I now dwell, and my several tracts or parcels of land adjoining thereto; also all my personal estate, except my negroes, and to his heirs and assigns for ever." "Item. My will and desire is, that all my young negroes, born since my negroes were recorded, shall be absolutely free at my death." The inventory, returned on *Gaither's* estate, does not include any of his slaves. *Ignatius Allen*, a witness sworn in the cause, deposed that he lived with *Gaither* at the time he sent for *T. Boyd* to take the acknowledgment of a deed to set his negroes free; that *Boyd* came and drew the deed; that after it was drawn, *Gaither* did sign, seal, and acknowledge the same as his act and deed, and did deliver the same to *Boyd*, requesting him to have it recorded. That when *Gaither* executed and signed the deed he was confined to his bed; that he called

upon the witness to assist him in getting up in his bed to sign the deed; that the witness accordingly did assist to raise *Gaither* in his bed, and that he stood by and was present, and did see *Gaither* sign the deed, and acknowledge it as his act and deed; and also saw *Boyd* sign the same as a witness thereto. That *Gaither* asked *Boyd* if it was necessary that any one else should sign it, and *Boyd* replied it was not. That *Gaither* and *Boyd* both observed then, that there were several who also saw him sign; that *Gaither* requested the persons who were present, to wit, *Benjamin Ijams*, (who has left the state,) and *Sarah Ijams*, (who is since dead,) and also the witness in particular, all to take notice that he had signed an instrument of writing to set all his negroes free. The witness lived with *Gaither* eight or nine years after the deed was executed, and frequently heard him declare that all his negroes would be free at his death, as he had them recorded in court. That the witness cannot write his name, and did not sign the deed as a witness. That *Robert Waters*, another witness also sworn in the cause, deposed, that at the request of *Gaither* he went to draw his will, it was late in the evening, and the witness objected doing it that evening, because he alleged it was too late; but on *Gaither's* saying it would be short, he agreed to draw it. That *Gaither* told him he had deeded his negroes to be free at his death, and that the deed had been recorded several years. That after the witness had drawn the clause in the will in favour of *B. Ijams*, he told the witness to draw a clause in favour of some young negroes, and when the witness began, he told him to stop, and said it was hardly worth while, the old ones he had deeded free at his death, and the deed had been recorded for several years, and the young ones will be free, if not named in the will. But after some pause he said, however, you may do it, and do it in this way, all my young negroes, born since my negroes were recorded, to be free at my death. The clause was then wrote as stated in the will, dated the 20th of June 1791. That *Gaither* died about the year 1793, and the negroes mentioned in the deed have been at large ever since. That he never heard that any one entitled to *Gaither's* estate ever set up any claim to the negroes, until about two years ago. The County Court,

1807.

Negro James
vs
Gaither

[*H. Ridgely*, Ch. J.] at April term 1802, gave judgment for the petitioner. The defendant appealed to the General Court; and at May term 1804, the General Court [*Chase*, Ch. J. *Done* and *Sprigg*, J.] *Reversed* the judgment of the county court, and gave judgment that the appellee, the petitioner, was a slave. On an *appeal* to this court by the petitioner, the case was argued at the last term before TILGHMAN, NICHOLSON and GANTT, J.

*Key* and *Johnson* (Attorney General,) for the Appellant, contended that the judgment of the general court, reversing that of the county court, must be reversed, unless this court think they are bound by a rigid construction of the act of assembly of 1752, *ch.* 1, *s.* 5, by which it is enacted, "that where any person or persons possessed of any slave or slaves within this province, who are or shall be of healthy constitutions, and sound in mind and body, capable by labour to procure to him or them sufficient food and raiment, with other requisite necessaries of life, and not exceeding fifty years of age, and such person or persons, possessing such slave or slaves as aforesaid, and being willing and desirous to set free or manumit such slave or slaves, may, by writing under his, her or their hand and seal, *evidenced* by two good and sufficient witnesses at least, grant to such slave or slaves his, her or their freedom," &c. They insisted that the act does not indispensibly require that two witnesses should *subscribe* their names to the deed. That an enlarged construction ought to be given to the word *evidenced*, they referred to the *Stat. of Frauds*, 29 *Car.* II, *ch.* 3, *s.* 5. *Co. Litt.* 283. a. *Jacob's L. D.* tit. *Evidence.* *Windham vs. Chetwynd*, 1 *Burr.* 414. 2 *Eq. Ca. Ab.* 345, case 15. *Gitting's Lessee vs. Hall*, 1 *Harr. & Johns.* 14.

*Shaaff* and *T. Buchanan*, for the Appellee, also referred to the act of 1752, *ch.* 1. *Shaffer's Lessee vs. Corbett*, 3 *Harr. & M'Hen.* 513. *Ridgely vs. Howard, et al. Ibid* 321; and the act of 1796, *ch.* 67.

*Curia adv. vult.*

At this term

JUDGMENT AFFIRMED.